UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SHERYL ELLEN EDWARDS,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | Case No.: 5:11-CV-00320-LHK<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff Sheryl Ellen Edwards ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to obtain review of the Social Security Administration Commissioner's decision denying her claim for disability benefits. Plaintiff seeks an order reversing the decision and awarding benefits. Presently before the Court are the parties' cross-motions for summary judgment. Having considered the parties' papers and the administrative record, the Court GRANTS Plaintiff's motion and DENIES Defendant's motion for the reasons discussed below.

I.   BACKGROUND

   A.   Factual Background

Plaintiff was born in 1956. Administrative Transcript ("Tr.") 45. She has a master's degree in mathematics and has worked in the following jobs: senior technical writer for Oracle (1998-2002); technical writer and senior technical writer for Serena (1998-2002); technical writer for

1

Case No.: 5:11-CV-00320-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

IBM (1995-1998); and college math professor at Foothill College (1983-1995). *Id.* at 79-81, 220, 232-36. In her application for disability benefits, Plaintiff alleged that she became disabled on August 1, 2002, due to the following: endometriosis; environmental, food, and medication allergies; chemical sensitivities; burning of the sinuses' lining; unspecified impairments requiring orthotics for both feet; sleep apnea; depression; post-traumatic stress disorder ("PTSD"); and musculoskeletal impairments that cause pain and swelling. *Id.* at 36, 124, 128, 219. Plaintiff was insured at the alleged onset of her disability and remained insured through December 31, 2007. Tr. 32, 34. Additional facts are discussed as necessary in the analysis.

**B. Procedural History**

On March 24, 2006, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, seeking benefits from August 1, 2002, the alleged disability onset date, and December 31, 2007, the date last insured. Tr. 32, 118. Plaintiff's application was initially denied on June 14, 2006. *Id.* at 120-24. Plaintiff sought reconsideration, which was denied on December 21, 2006. *Id.* at 126-28.

On February 22, 2007, Plaintiff filed a request for hearing by an Administrative Law Judge ("ALJ"), which was granted. *Id.* at 129. On September 23, 2009, Plaintiff, represented by counsel, testified at the hearing before ALJ Brenton Rogozen. *Id.* at 76-117. A medical expert ("ME") and a vocational expert ("VE") also testified. *Id.* at 77. On September 25, 2009, ALJ Rogozen issued his decision, which found that Plaintiff was not disabled and denied disability insurance benefits. Tr. 45. Plaintiff requested review of this decision before the Social Security Appeals Council, *id.* at 28, which denied the request on August 12, 2010. *Id.* at 5-7.

Plaintiff filed the instant motion for summary judgment on August 19, 2011. ECF No. 11. Defendant filed his cross-motion on September 16, 2011. ECF No. 12. Plaintiff filed her reply on October 3, 2011. ECF No. 13.

**II.   LEGAL STANDARDS**

**A. Standard for Reviewing the ALJ Decision**

The Court has authority to review the ALJ decision pursuant to 42 U.S.C. § 405(g). The

2

Case No.: 5:11-CV-00320-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Court may disturb the ALJ decision only if it is unsupported by substantial evidence in the record as a whole or if it is not an application of the proper legal standard. *Id.*; *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), and it "means more than a scintilla but less than a preponderance." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation and internal quotation marks omitted). If the evidence supports more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

**B. Standard for Determining Disability**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must also be so severe that a claimant is unable to do her previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," given her age, education, and vocational background. 42 U.S.C. § 423(d)(2)(A).

The ALJ evaluates Social Security disability cases using a five step sequential evaluation process. 20 C.F.R. § 404.1520.

1. The ALJ must first determine whether the claimant is presently engaged in substantially gainful activity. 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled; otherwise the evaluation proceeds to step two.

2. The ALJ must determine whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled; otherwise the evaluation proceeds to step three.

3. The ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments, 20

3

Case No.: 5:11-CV-00320-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

C.F.R. § 404, subpart P, app. 1. 20 C.F.R. § 404.1520(d). If so, the claimant is disabled; otherwise the analysis proceeds to step four.

4. The ALJ must determine the claimant's residual functional capacity ("RFC") despite limitations from the claimant's impairments. 20 C.F.R. § 404.1520(e). If, given her RFC, the claimant can still perform work that the individual has done in the past, the claimant is not disabled. If the claimant cannot perform her past work, the evaluation proceeds to step five. 20 C.F.R. § 404.1520(f).

5. At step five, the Commissioner has the burden of demonstrating that the claimant is not disabled. The Commissioner must show that the claimant can perform some substantial gainful work in the national economy, considering the claimant's age, education, and vocational background. 20 C.F.R. § 404.1520(g)(1). If not, the claimant is disabled.

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

### III. THE ALJ'S FINDINGS

In this case, the ALJ applied the five step sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantially gainful work since August 1, 2002, the alleged onset date. Tr. 34. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity; degenerative joint disease of the right knee; obstructive sleep apnea; PTSD; and a history of alcohol abuse and dependence, in sustained remission since 2003. *Id.* At step 3, the ALJ found that Plaintiff's combination of impairments did not meet or medically equal the requirements of the Listing of Impairments. *Id.* at 34-35.

The ALJ defined Plaintiff's RFC as follows:

> [T]he claimant is limited to lifting and carrying no m ore than 20 pounds occasionally and no more than 10 pounds frequently. The claimant is also limited to standing and/or walking no more than 6 hours total in an 8-hour workday and sitting no more than 6 hour s total in an 8-hour workday. The claimant is limited to climbing, balancing, kneeling, crouching, and crawling no more than occasionally. The claimant is limited to stooping and to bending at the waist no more than frequently. T he claimant had a moderate restriction of her ability to understand, remember, and carry out the complex and detailed tasks characteristic of skilled or

4

semi-skilled work, but no significant limitation of her ability to understand, remember, and carry out the simple and repetitive 1-2 step tasks characteristic of unskilled work.

*Id.* at 35.

Accordingly, at step four, the ALJ found that Plaintiff's RFC did not allow her to perform her past relevant work. Tr. 45. At step five, however, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* at 45. Accordingly, the ALJ found that Plaintiff was not disabled and denied disability benefits. *Id.* at 46.

## IV. ANALYSIS

Plaintiff does not take issue with the ALJ's conclusions at steps one, three, and four. Plaintiff argues that the ALJ erred at step two as follows: finding Plaintiff not credible, improperly testifying as a witness on Plaintiff's credibility, and failing to include Plaintiff's multiple chemical sensitivity ("MCS") as a "severe impairment." *See* Mot. 4-6.[1] Plaintiff also contends that the ALJ erred in weighing Plaintiff's testimony and the medical evidence when determining Plaintiff's RFC. *Id.* at 8. Finally, Plaintiff argues that the ALJ erred at step five by failing to consider the presence of Plaintiff's non-exertional limitations and relying solely on the medical-vocational guidelines in determining that there were significant numbers of jobs in the national economy that Plaintiff could perform. *Id.* at 8-9. The Court addresses these arguments in turn.

### A. The ALJ Did Not Err In His Credibility Determination

Plaintiff alleged that she had a difficult time around people due to allergies to perfumes, hair sprays, and various household chemicals. Tr. 36, 219. Plaintiff also reported that her chemical sensitivities caused her to become very dizzy and drowsy. *Id.* at 36, 271. She alleged that she was unable to be in locations where cleaning solvents and scents were used, such as older buildings and newer buildings. *Id.* Plaintiff testified at the hearing that she stopped working as a technical writer for Oracle due to her sensitivity to chemicals. *Id.* at 36, 42, 82-83.

---

[1] The page numbering refers to the page numbers on the ECF stamp on the top of the page, rather than the original page numbering of the briefs.

5

Case No.: 5:11-CV-00320-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The ALJ pointed to inconsistencies in Plaintiff's subjective complaints in the medical record and Plaintiff's hearing testimony; the lack of clinical signs and laboratory findings in the case record; and Plaintiff's significant daily activities to support his finding that Plaintiff was "not generally credible" as to her impairments generally and MCS specifically. *Id.* at 43. The ALJ also found Plaintiff's testimony regarding MCS "glaring[ly] inconsistent" with the ALJ's own observations of Plaintiff at the hearing. *Id.* at 44. Accordingly, the ALJ credited Plaintiff's subjective complaints "only to the degree that they are supported by the objective medical evidence, including the well supported medical opinion evidence." *Id.* at 45. As discussed below, the ALJ did not err in finding Plaintiff's subjective complaints unreliable.

### 1. Plaintiff's Testimony

In order to find Plaintiff's testimony regarding the severity of her impairments unreliable, the ALJ was required to "make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958. Where, as here, there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). The ALJ may consider many factors in weighing a claimant's credibility, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* at 1284; *see also Orn v. Astrue*, 495 F.3d 625, 637-39 (9th Cir. 2007). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

Substantial evidence in this record supports the ALJ's conclusion that Plaintiff's testimony was not entirely credible. For example, the ALJ noted that Plaintiff's subjective complaints were "directly contradicted by [Plaintiff's] own acknowledged ability to perform full-time work with

Case No.: 5:11-CV-00320-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

earnings above substantial gainful activity levels during seven of the 15-20 years [Plaintiff's treating physicians] opined that [Plaintiff's] debilitating limitations had been present." Tr. 44. In addition, the ALJ found that Plaintiff's alleged MCS symptoms were not supported by "necessary abnormal clinical signs and/or diagnostic findings." *Id.* at 43. The ALJ also pointed to Plaintiff's "significant daily activities . . . such as walking 2 miles for [sic] day several days per week, driving a car, reading, socializing, and taking a class in nonviolent communication;" Plaintiff's "failure to try recommended psychiatric treatment modalities for relief;" and "the lack of consistency of [Plaintiff's] subjective complaints throughout the medical record and during her testimony at hearing." *Id.* In sum, the ALJ offered "specific, clear and convincing evidence" for discrediting Plaintiff's subjective testimony. *Smolen*, 80 F.3d at 1281. Accordingly, the ALJ did not err in finding Plaintiff's subjective complaints unreliable.

### 2. ALJ Did Not Err in Relying on His Observations In Finding Plaintiff Not Credible

The ALJ also noted that, during the hearing, Plaintiff did not exhibit any of her chemical sensitivity symptoms in the hearing office, which had undergone carpet cleaning with chemicals once every two months over the past year. *Id.* at 44. The ALJ found this "glaring inconsistency" indicative of Plaintiff's lack of credibility. *Id.* Plaintiff asserts the ALJ's personal observation of Plaintiff's symptoms was error. Mot. 5. The Court disagrees.

According to Social Security Ruling (SSR) 96-7p, so long as the ALJ does not rely solely on his observations but also considers other objective medical evidence, he is allowed to "consider his . . . own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." 1996 WL 374186, at *5. Here, the ALJ observed Plaintiff's symptoms in the hearing room to be inconsistent with her alleged MCS. As discussed above, the ALJ gave other reasons, including the lack of supporting clinical signs and/or laboratory findings, for not believing Plaintiff's testimony regarding MCS. Accordingly, the ALJ did not err in also considering his own observations of Plaintiff's symptoms.

7

Case No.: 5:11-CV-00320-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**B. The ALJ Properly Weighed the Evidence in Determining Plaintiff's RFC**

The record contains evidence from the following doctors: (1) Dr. Rose Kenny,[2] who examined Plaintiff from 2003-2005, Tr. 316-43; (2) Dr. Vincent A. Marinkovich, Plaintiff's treating allergist from 1997 to 2002 and 2006 to 2007, *id.* at 359-85, 424, 483; (3) Dr. Anthony J. Monteverdi, a state medical consultant and psychiatrist who examined Plaintiff in 2006, *id.* at 344-47; (4) Dr. Jenny Forman, a state medical consultant and a clinical psychologist who evaluated Plaintiff in 2009, *id*. at 583-90; (5) Dr. Clark E. Gable, a state medical consultant and an internist who evaluated Plaintiff in 2009, *id*. at 618-27; (6) Dr. Madill, who prepared a Medical Source Statement in 2009, *id.* at 576-82; (7) Dr. Melvin Friedman, Plaintiff's treating osteopathic physician of 15 years who prepared a Medical Source Statement in 2009, *id.* at 348-54; and (8) Dr. Steven Gerber, the testifying ME, Tr. 100-06.

The ALJ gave "no significant weight" to Plaintiff's treating physicians -- Drs. Marinkovich, Friedman, and Madill -- when determining Plaintiff's RFC. Tr. 44. The ALJ reasoned that these doctors' opinions were "contradicted by the doctors [sic] own treatment notes, are expressly based upon the claimant's subjective complaints which the [ALJ] f[ound] are not generally credible, and are directly contradicted by the claimant's own acknowledged ability to perform full-time work . . . during seven of the 15-20 years before these doctors opined that the claimant's debilitating limitations had been present." Tr. 44. By contrast, the ALJ accorded the opinions of Drs. Gerber, Foreman, Gable, and Monteverdi the greatest weight because they "were mutually supporting and well supported by the evidence in the case record as a whole." *Id.*

Plaintiff argues that the ALJ erred in determining Plaintiff's RFC because the ALJ based his finding on inadmissible evidence from non-treating doctors, who examined Plaintiff in 2009, and discounted evidence from Plaintiff's treating doctors, who examined Plaintiff during the period between her alleged onset date, August 1, 2002, and the date she was last insured, December 31, 2007. Mot. 11 at 4-6. The Court is not persuaded.

---

[2] The ALJ did not discuss Dr. Rose's evidence. However, Plaintiff does not contend that the ALJ's failure to do so was reversible error. The Court finds that even if this were error, it was harmless here because Dr. Rose did not provide any further evidence of MCS.

8

Case No.: 5:11-CV-00320-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### 1. The ALJ Gave Specific and Legitimate Reasons For Discrediting Plaintiff's Treating Physicians' Opinions

The ALJ is responsible for resolving conflicts and ambiguity in the medical testimony. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). Where, as here, Plaintiff's treating physicians' opinions are contradicted by another doctor, the ALJ may disregard the treating physicians' opinion only if the ALJ provides "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (internal quotation marks omitted). An ALJ is also entitled to reject a treating physician's opinion when there are no clinical findings to support it. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Finally, the ALJ may reject the treating physician's opinion if it conflicts with that of the ME, where the ME's opinion is supported by clinical evidence in the record. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

While it is true, as Plaintiff notes, that Drs. Marinkovich, Friedman, and Madill diagnosed Plaintiff with MCS, the ALJ provided a reasoned explanation for giving these opinions "no significant weight." Tr. 37-38, 41-42. The fact that Plaintiff's treating doctors relied on Plaintiff's unreliable subjective complaints for their diagnoses, *id.* at 38, 41, 42, was a legitimate reason for discrediting these doctors' opinions. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010); *see also Morgan*, 169 F.3d at 602. Moreover, the ALJ found Plaintiff's treating physicians' opinions were not supported by the other evidence in the record and were not supported by objective clinical signs or diagnostic findings. *Id.* at 38. For example, the ALJ noted that the laboratory tests Dr. Marinkovich ran to screen for Plaintiff's allergies only showed "intermittently positive and equivocal" results of Plaintiff's allergies to particular foods and molds. *See id.* at 37-38, 385-97. One of Dr. Marinkovich's treatment notes, dated January 3, 2007, indicated that Plaintiff could walk two to three miles per day for two to three days a week, which contradicted Plaintiff's reported symptoms. *Id.* at 483. The ALJ found that Plaintiff's engagement in other activities such as "driving a car, reading, socializing, and taking a class in nonviolent communication" contradicted Plaintiff treating physicians' assessment of the severity of Plaintiff's impairment and resulting limitations. *Id.* at 43. The ALJ also found that Dr. Madill's statement

that Plaintiff would not be able to perform even sedentary work was in direct contradiction with Plaintiff's "official earnings record indicat[ing] that she performed work at SGA level" during part of the period addressed by Dr. Madill. *Id.*

Thus, the ALJ provided "specific and legitimate reasons" for discrediting these treating physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (internal citations omitted). By the same token, the ALJ was entitled to give more weight to Plaintiff's medical records and the ME's opinion consistent with those records.

### 2. The ALJ Did Not Err in Giving Greater Weight to Non-Treating Physicians

Drs. Forman, Gable, and Gerber were all in accord in their assessment that Plaintiff would be able to walk up to six hours a day and could perform simple tasks characteristic of unskilled work. *See id.* at 103-04, 583-90, 618-21. Plaintiff argues that the ALJ should not have relied on these doctors' opinions because they offered medical evidence that was "not really material to the period involved . . . and did not disprove, the earlier evidence." Mot. 5. Plaintiff further contends that the ALJ erred in relying on the conclusions of Drs. Forman and Gable because these doctors were not Plaintiff's treating doctors and on Dr. Gerber's conclusion because Dr. Gerber had never examined Plaintiff. ECF No. 11 at 5-6. The Court finds these arguments unpersuasive.

Federal regulations permit the ALJ to consider evidence from non-treating medical sources in the determination of disability and do not require contemporaneous evaluation. 20 C.F.R. § 404.1527(f)(2)(i) ("State agency medical . . . consultants . . . are highly qualified physicians . . . who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider [their findings] . . . as opinion evidence, except for the ultimate determination about whether you are disabled."). "The opinions of non-treating or non-examining physicians may also serve as substantial evidence [for determining RFC] when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.

The ALJ explained that he "weighed the medical opinion evidence present for the record" and found that the opinions of Drs. Forman, Gable and Gerber were "mutually supporting and well

10

Case No.: 5:11-CV-00320-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

supported by the evidence in the case record as a whole." Tr. 44. Upon examination of the ALJ's decision and its consistency with the record, the Court finds that the ALJ's decision to give "greatest weight" to these doctors was not error. *Id.*

Accordingly, the ALJ did not err in weighing and resolving the conflicting medical evidence in determining Plaintiff's RFC.

### C. The ALJ Erred at Step Five

Plaintiff argues that the ALJ erred at step five by failing to consider Plaintiff's non-exertional limitations and by relying solely on the Medical Vocational Guidelines ("grids") as evidence of the existence of significant numbers of jobs that Plaintiff was capable of performing. Mot. at 8. Plaintiff argues that the ALJ also erred in not specifying any particular occupations that Plaintiff could perform and made no mention of the extent of erosion to the job numbers stemming from Plaintiff's physical limitation of six hours of walking/standing. *Id*. at 8-9. The Court addresses each of these contentions in turn.

#### 1. The ALJ Erred to the Extent He Relied Solely on the Grids

At step five, the Commissioner bears the burden "to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's [RFC], age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1560(b)(3)). The Commissioner can meet his burden in two ways: "(1) by the testimony of a vocational expert, or (2) by reference to the [grids]." *Id.* at 1099. "[T]he grids are not designed to establish automatically the existence of jobs for persons with both severe exertional and non-exertional impairments." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006).

Where, as here, a claimant suffers from both exertional and non-exertional limitations, the girds "provide a framework to guide the ALJ's decision." 20 C.F.R. § 404.1569a(d). In such situations, the ALJ must consult the grids first. *Lounsburry* , 468 F.3d at 1115. "If the claimant is 'disabled' under the grids, there is no need to examine the effect of the non-exertional limitations. But if the same person is not disabled under the grids, the non-exertional limitations must be

11

Case No.: 5:11-CV-00320-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

examined separately." *Id.* at 1116.  The ALJ should "determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988); *see also* SSR 83-12 (noting that the ALJ is required to "consider the extent of any erosion of the occupational base and access [sic] its significance.").  A VE's testimony "is required when a non-exertional limitation is 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitation."  *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (quoting *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988)).

Here, as discussed above, the ALJ found that Plaintiff suffers from both exertional and non-exertional limitations.  The ALJ determined that claimant's exertional limitations allowed her "to perform the full range of light work."  Tr. 46.  The ALJ found that Plaintiff has non-exertional postural limitations of "climbing, balancing, kneeling, crouching, and crawling no more than occasionally" and "stooping and bending at the waist no more than frequently."  *Id.*  The ALJ also found that Plaintiff's severe impairment of PTSD resulted in non-exertional mental limitations of "moderate restriction of her ability to understand, remember, and carry out the complex and detailed tasks characteristic of skilled or semi-skilled work."  *See id.* at 34-35; *see also Holohan v. Massanari*, 246 F.3d 1195, 1208-09 & n.12 (9th Cir. 2001) (noting that psychiatric impairments are non-exertional limitations).

Although the ALJ retained a VE, and the VE testified at the hearing, the ALJ's step five analysis appears to rely only on the grids.  Based on Plaintiff's exertional limitations limiting Plaintiff to light work, the ALJ determined that the grids, specifically 20 C.F.R. §§ 202.14 and 202.21, directed the ALJ to find Plaintiff "not disabled."  Tr. 46.  However, the ALJ concluded, without citing to any evidence, that Plaintiff's "additional limitations had little or no effect on the occupational base of unskilled medium work," and that Plaintiff's mental limitations did not "significantly erode the unskilled light job base."  *Id.*  These conclusions are not supported by substantial evidence and are therefore VACATED.

On this record it is unclear whether Plaintiff's non-exertional limitations were "'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitation[s]." *Hoopai*, 499 F.3d at 1076. First, the ALJ's decision does not specify which of Plaintiff's several non-exertional limitations he considered when he determined that "the *additional limitations* had little or no effect on the occupational base of unskilled medium work." Tr. 46 (emphasis added). Second, the relevant inquiry in this case should have been whether all of Plaintiff's non-exertional limitations were "sufficiently severe so as to significantly limit the range of" light work, *not* medium work, as the ALJ's decision states. Without more explanation, it is impossible for this Court to determine whether the ALJ considered all of Plaintiff's non-exertional limitations' impact on the occupational base of light work.

Defendant's reliance on the SSRs is unavailing. Defendant argues that Plaintiff's postural limitations "to no more than occasional climbing, kneeling, crouching, crawling, and balancing . . . do not significantly erode the occupational base for unskilled, light work." Opp'n 9 (citing SSR 83-14). SSR 83-14 does state that "to perform substantially all of the exertional requirements of most . . . light jobs, a person would not need to crouch and would need to stoop only occasionally" and that the "inability to crawl on hands and knees" has "very little or no effect on the unskilled light occupational base." 1983 WL 31254, at *2, *5. SSR 83-14 also notes that "[i]n jobs at the medium level of exertion, there is more likelihood than in light work that such factors as the ability to kneel . . . will be a part of the work requirement." *Id.* at *5. However, SSR 83-14 notes that limitations on balancing, one of Plaintiff's non-exertional limitations, "can affect the capacity to perform certain jobs at all levels of physical exertion" and that an "an entire range of jobs can be severely compromised" as a result. *Id.* at *2; *see also* SSR 96-9P, 1996 WL 374185, at *7 ("[I]f an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base."). On this record, it is impossible to know to what extent Plaintiff's limitation on balancing eroded the occupational base for light work. The ALJ's "failure to even mention the disparity between Plaintiff's specific limitations and the vocational predicates of the [grids]" is reversible error. *Gregory v. Astrue*, CV-08-0387-PHX-

GMS, 2009 WL 607417, at *8 (D. Ariz. Mar. 6, 2009) (citing *Boone v. Barnhart*, 353 F.3d 203, 210-11 (3d Cir. 2003)); *see also Allen v. Sec'y of Health and Human Servs.*, 726 F.2d 1470, 1472-73 (9th Cir. 1984) (remanding where ALJ's conclusion that non-exertional limitation was not "significant" was not supported by substantial evidence that there were significant number of sedentary jobs despite the non-exertional limitation).

Moreover, the record here suggests that a VE's testimony may have been required pursuant to the SSRs. SSR 83-14 states that "[w]here the adjudicator does not have a clear understanding of additional limitations on the job base, the services of a [vocational specialist] will be necessary." At the hearing, the ALJ stated that he was "kind of unsure" as to how to evaluate Plaintiff's moderate mental limitation due to her memory loss. Tr. 105. Thus, the services of a VE may have been required to determine whether there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Even if a VE was not *required*, the SSRs *recommend* using a VE where, as here, a claimant has limitations on the ability to balance. SSR 96-9p, SSR 85-15.

The ALJ's reliance on the grids would be harmless if the ALJ had also relied on a VE's valid testimony to conclude that there were significant numbers of jobs in the national economy that Plaintiff could perform. The ALJ in this case did retain a VE, but, because the ALJ's decision does not cite any evidence, Tr. 46, it is unclear the extent to which the ALJ relied on the VE's testimony. However, even if the ALJ implicitly relied on the VE's testimony, as explained below, that testimony itself was flawed.

### 2. To the Extent the ALJ Relied on a Vocational Expert, the ALJ Erred in Posing Hypothetical

As the Ninth Circuit has stated:

[T]he ALJ can call upon a vocational expert to testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy. At the hearing, the ALJ poses hypothetical questions to the vocational expert that "set out all of the claimant's impairments" for the vocational expert's consideration. *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987). The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record.

14
Case No.: 5:11-CV-00320-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

> *See id.* at 1279-80. The vocational expert then "'translates [these] factual scenarios into realistic job market probabilities' by testifying on the record to what kinds of jobs the claimant still can perform and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of 'not disabled.'" *Desrosiers*, 846 F.2d at 578 (Pregerson, J., concurring) (internal citations omitted).

*Tackett*, 180 F.3d at 1101. If an ALJ's hypothetical does not reflect all of the claimant's limitations, then "the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991).

The following is the extent of the hypothetical posed to the VE:

Q: If the claimant would have . . . a moderate limitation in performing complex assignments due to memory loss and that's the only limitation I'm going to add to this question, would the claimant be . . . able to be either a technical writer or a math professor?

\* \* \*

A: . . . she would not be able to be a technical writer; however, . . . I would say that this hypothetical might not exclude all mathematical . . . teaching jobs.

Q: Could she be a high school math teacher?

A: At a certain level, sure, I would say so.

Tr. 109-111.

This hypothetical did not set out all of Plaintiff's impairments for the VE's consideration. Although the hypothetical included Plaintiff's moderate mental restrictions, Tr. 108-09, it did not include Plaintiff's limitations of "lifting and carrying no more than 20 pounds occasionally and no more than 10 pounds frequently; standing and/or walking no more than 6 hours total in an 8-hour workday; climbing, balancing, kneeling, crouching, and crawling no more than occasionally; and stooping and bending at the waist no more than frequently." Tr. 35. Accordingly, the VE's testimony in this case has no evidentiary value.

Moreover, the VE's testimony was also flawed because the VE failed to "translate[] [these] factual scenarios into realistic job market probabilities by testifying on the record whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the

15

Case No.: 5:11-CV-00320-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

economy to support a finding of not disabled." *Tackett*, 180 F.3d at 1101. *See also* SSR 85-15 1985 WL 56857, at *3 ("Whenever vocational resources are used and the decision is adverse to the claimant, the determination or decision will include: (1) citations of examples of occupations/jobs the person can do functionally and vocationally, and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions in the country."). Although the VE identified one specific occupation, high school math teacher, the VE did not mention whether there were significant numbers of those jobs in Plaintiff's region or in the several regions of the country. Furthermore, by citing only one occupation that Plaintiff was able to perform, the VE's testimony undermines the ALJ's finding that Plaintiff's non-exertional limitations "did not significantly erode the unskilled light job base." Tr. 46. *Cf. Lounsburry*, 468 F.3d at 1117-18 ("significant range of . . . . work" requires "a significant number of occupations").

In sum, the hypothetical posed to the VE and the VE's testimony were both flawed. Accordingly, even if the ALJ implicitly relied on the VE's testimony, the VE's testimony did not constitute substantial evidence supporting the ALJ's finding of non-disability at step 5.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's motion for summary judgment. The Court AFFIRMS the ALJ's decision as to steps one to four but REVERSES and REMANDS as to step five. On remand, the ALJ must: (1) reconsider the extent of any erosion of the occupational base of light work caused by Plaintiff's non-exertional limitations, and (2) if necessary, utilize the services of a VE to complete the step 5 analysis in accordance with this Order.

**IT IS SO ORDERED.**

Dated: March 26, 2012

*Lucy H. Koh*
LUCY H. KOH
United States District Judge